The second case is 194865, United States v. King. Mr. Kirkland, whenever you're ready. Thank you, Harv. May it please the court. My name is Brad Kirkland. I represent Darrius King. So, I will start with talking a little bit about the facts of this case. I do think that they're we can hear everything you say. Right there? Yeah, that's fine. Sound good? Move it up just a little. That's fine. That's fine. Thank you. Right there? That's great. Okay, thank you, your honor. So, the facts of this case, it starts out with Darrius King. He gets into some trouble in Malden, South Carolina. South Carolina case. Outside of a club, two shots are fired in the the security staff at the club ends up determining that he was the one that fired the shots. So, they detain him and wait for the police to arrive. When the police arrive, they already have him held at gunpoint. So, the police just go ahead and make the arrest and they charge him in South Carolina for felon in possession of a firearm. Then the federal government ends up filing a 922-G and a 922-A. Nevertheless, it's basically a 922-G case. Now, when he gets to court, he makes the decision and I'll explain to you in a moment why I think the facts of this case are relevant. So, when he gets to court, he ends up deciding to plead guilty to the 922-G1 and the 924-A2, which requires a sentence that does not exceed 10 years. That is the absolute maximum that you can receive under the statute. Just a point of information, what did you want the district court to say? Excuse me? What did you want the district court to say? To say? You said he didn't explain the effect. And I apologize, your honor, because your mask is just making it difficult for me to hear and I've lost half my hearing in my left ear. You said he didn't explain what the effect would be of a violation of supervision. Yes, yes, sir. I'm more than happy to answer that question. That's your complaint, correct? I filed an Andrews brief and that is what I was told to brief. So, what I'm asking you is, what exactly did you wish the district court to say? So, the district court under the current state of the law, under Rule 11 right now as it stands, is required to explain not only the term of supervised release, but the significance, or you can use alternatively the word, the effect of a violation of supervised release. In other words, that you can receive additional time. Now, it's important in this case, in particular, I wouldn't say that this case is unique because this does happen, but it is unusual. And the reason why it's unusual is because normally this would not be a problem. A decision in favor of the defendant would not just wholesale effect all of the cases in South Carolina or in the Fourth Circuit Court of Appeals. So, I'm still, I want to know exactly, to the district judge, what you would have, what you would have had the district court actually say. Okay. My sentence to him, when I'm explaining the sentence to him, I would tell him, you are facing, and I'm just going to walk through the whole thing that I would tell him, you are facing a maximum of 10 years of incarceration. Your attorney and others may have talked to you about your guidelines provisions. I cannot comment right now on what your guidelines are going to be within that 10 years. But once we get the pre-sentence report back, then you will be able to object to any particular guidelines that you don't agree with, and we will have a hearing on any issues that you have. You must also understand that this case, that your case carries a mandatory term of either three or five years of supervised release, and that will be based upon your record. Now, should you violate your supervised release after you are sentenced, then you would face an additional penalty, and that additional penalty could exceed the maximum penalty that I have outlined to you of 10 years. It is completely separate, and therefore, if this is a Class C felony, which this is, or if it's Class B felony, you could, Class C felony, you could be facing up to two additional years over the 10-year sentence that I give you. If it's a Class B or A felony, you could be facing up to an additional five years, up to 15 years, if you violate, if you are given the maximum and you violate your penalty, and you violate your supervised release. Excuse me? Has any of this scenario that you sketched out come to pass? Not, no, it hasn't. It hasn't, okay. No. I appreciate that. So, I'll tell you what has come to pass, so that then you just understand where we are. So, what happened was, his guidelines ended up being 130 to 167, which was over the 10 years. Now, the judge was kind enough to reduce that, because then it gets bumped down automatically to 120. So, the judge was kind enough to reduce his sentence by 10 months and give him 110, but it did not solve the problem that no one had ever told him what the effect or the significance of supervised release was. So, he could still receive a sentence, if he serves all of his time, he could receive a sentence in excess of the maximum. What do you, what significance do you ascribe to the amendment of Rule 11 in 2002, where the drafters cut the language to the effect of, out of the amendment? I mean, we presumably have got to take account of that. So, what is... I've got the solution. Yeah, if the prior amendment said, if the prior version of Rule 11 said, to the effect of, and it would clearly require an explanation, but then that language was omitted from Rule 11, and all I want to know is what significance you attach to that. The significance that I attach to it, and I will give you my reasoning, is that Rule 11 has not changed in any way, shape, or form based on the change in the language. That might come as a surprise to those who were changing it. Actually, I don't think it did. And I'll explain why that is. But those are very good questions, Your Honor. I very much appreciate them, because I looked into this very hard. So, what happened was in, and let me find my notes on this. So, the 2002 amendment. Okay. So, we'll start with what it used to be. All right. What it used to be is that the defendant had to be informed of the maximum possible penalty provided by law, including the effect of any special parole or supervised release term. Okay. So, that when Thorne, which is the case that they, the Fourth Circuit cited to me, they want, we want me to, we want you to brief this, and we want you to take into consideration Thorne. That was the law at the time. Okay. So, now in 2002, what happened was, and this is the language as of today. So, in 2002, what happened was, it was changed to Section H, and Section H says that the defendant must be informed. I'm adding that part. And then H says, as to any maximum possible penalty, including imprisonment, fine, and term of supervised release. It does not include, as you said, the word effect. So, how in the world then would I? You know, I'm still, I still think that's, I think that's really something we're going to have to grapple with. Right. And I'm, yeah, that's, and that's what I'm, that's where I'm going right this very minute. Okay. So, the committee notes. Can I ask you another question? It was the same question I asked the good, good lawyer in the earlier case. Do you wish to withdraw the guilty plea? Does your client wish to withdraw the guilty plea? Okay. Let me tell you what's been going on with that. Could I have a straight answer? The answer is, I don't know. The answer is, you don't know. I do not know. Well, normally, when a party seeks relief from a court, yes, the party is explicit about exactly what sort of relief you are asking for. And so, to say, you know, I don't know. I mean, I wonder why we're going through all this. And please, I mean, about the effect of violating the conditions of supervised release. He hasn't violated them. He hasn't, this hasn't, you just indicated to me that the scenario hasn't played out. Correct. Let me just say that as a result of this appeal, and maybe well before, your client is super aware of the effect of violating the conditions of supervised release. And so, you've essentially, the problem has been remedied. And it is concerning to me that you can't indicate to me what kind of relief is. I mean, these are sort of practical problems I have because I'm certain at this point that any omission has been more than cured at this point. And I'm not sure that he even wishes to withdraw the plea. Okay, and I can explain to you what's happened. You understand what I'm saying? Yes, absolutely. And I knew that this was going to number one problem that I had to deal with today. The reason I'm asking you that is we have a precedent out there. And the precedent is the Plain Error, which I'm sure you're familiar with. And it said that the Plain Error was a question of whether substantial rights were affected. And here, you can get at the substantial rights question either through the third prong of Orlano, if this is up on Plain Error, or you can get to the substantial rights question through Rule 11H, which says that errors shall be disregarded unless substantial rights are affected. So, we are at the position of asking, were there substantial rights that were affected? And the answer to that question that Applicano gave is, was there a reasonable probability that he would not have pled guilty if the error had been cured? And so, we're asking, would this error that you complained of, this is our precedent in Applicano, which we are obliged to follow. And we also got to take cognizance of the rule of the rule amendment. But the test for substantial rights that Applicano set out was whether there was a reasonable probability that he would not have pled guilty. And he never moved to withdraw the plea. And Applicano says that that's fatal if there's no reasonable probability that he would have withdrawn it. He hasn't, to this day, he was going to withdraw it. Now, the reason why is, I suppose, the case is an exceptionally strong one, as far as I can tell. It's a 922G offense about a felon in possession of a firearm. And I didn't know that Mr. King even contested that. So, if I'm not given any prayer for relief or specific prayer for relief, and if there's no reasonable probability he would not have pled guilty, and if the case against him is a strong one, which he's conceded to, I mean, those kinds of things are cumulatively things you've got to come to grips with. Yes. And I think that I can. The question that I was answering when you asked me if my client wanted a new trial, I said, I don't know. Now, the reason why I said I don't know is because in past cases, attorneys have given assurances, that's the word they use, to the court that their client would, in fact, go to trial if they received relief. I have not been, and I asked for several motions for continuance in order to try to get in touch with my client at Coleman FCI. Coleman FCI will absolutely... You don't want to go to trial on this, do you? I think he, if I was his attorney, I would absolutely advise him 100% to go to trial on this. 100%. He gained nothing from pleading guilty. Absolutely nothing. I want him to produce those witnesses. I want him to produce the Maldon, all of the Maldon Sheriff's Department people. I want him to produce all of the people that were in the parking lot, the people that detained him. I want him to prove the case because he didn't receive any benefit at all. If you don't receive any benefit at all, then you need to go to trial. But is that the issue as to whether he received a benefit or whether his substantial rights were affected, which is two different things? Yes, you're absolutely right. His substantial rights were affected. I think that if you look at the... I haven't been able to get in contact because they won't let me get in contact. But if you look at what is part of the record, because Lockhart adopted this totality of the record inquiry to determine if substantial rights were affected. And so they looked at everything that was talked about during the guilty plea, during the sentencing. So as part of this record, what you will see is that we have several letters written by Darius King that clearly indicate that he wants to go back to court and he wants to fight his case. And these are in the record. The first record, the first one was on... It was filed 11-2019. I'm writing to you because I would like to have a form of 2255 to move forward with my case, please. Also, the lawyer I had with James said he didn't file an appeal on my case. On my court date after I was sentenced, he came and spoke with me about an appeal. And I said, I wanted an appeal. I got a letter saying that he didn't appeal. I would like an appeal, please. So can you please put it on the record? Then he goes on to say, I'm skipping some. I would like to be put in for my direct appeal. Also, can I have a sentencing transcript, plea agreement, my indictment, please? I'm trying to fight my case. Please, I need these things. That's the first letter he wrote. Then he wrote, I am writing. I'm summarizing because we're running out of time quickly. I want my sentencing transcript. I want my plea agreement. And I would like to request counsel to file for direct appeal, please. If he planned to go to trial, why has he not moved to withdraw the plea? I don't know that he knows that he can do that. He's a layperson. He has a lawyer. He had a lawyer that pled him. I mean, so are you talking about when I got appointed for the- You advised him to go to trial. You think he really- I wasn't the district court. I wasn't the district court attorney. It's either someone who wished to go to trial, or you say should go to trial, has not moved to withdraw the plea. No, he has not. Well, I'll just content myself. I must say that, and I realize he has a perfect right to go to trial, but you say, of course, there's a matter of strategy. I would advise him to go to trial. A lot of defense attorneys that I've heard and talked to say that, look, the glamorous thing, the exciting thing sometimes is to go to trial. That's not glamorous to me. But the prudent thing is to often get the best kind of deal you can through a plea bargain. He got no deal. None. He pled without a plea agreement. He got no benefit from pleading guilty. Would he still have pled guilty had the district judge explained to him the effect of- at that time? Based on what he has filed, I do not believe he would. I absolutely do not believe, based on the things that he's filed, that he would plead guilty. He received no benefit. As in Lockhart, when Lockhart stated that the defendant received absolutely no benefit from pleading guilty, this defendant received no benefit at all. You've got to ask, no benefit in respect to what? I mean, if he goes to trial, is that- He gets the maximum. He faces the maximum. Is that a better deal? And the case against him is powerful. You say it's powerful, but I don't have a copy of the discovery, so I don't know that it is. He conceded it. He- if he concedes it- The factual basis for the plea, it's a very simple question. Was he a felon in possession of a firearm? He agreed with that. There's a- there has to be a factual basis for the plea. And the factual basis for the plea in this kind of situation is, yes, a felon who was in possession of a firearm. I mean- He admitted to it. He admitted to the- all of that. And I firmly believe that at this point in time, he believes, based on his- the filings that he's made with the court, that he received absolutely no benefit whatsoever, that he would go to trial. Can I ask a question? So there are two ways to look at this issue of substantial rights. One is the way that Judge Wilkinson suggests that we would consider whether or not the defendant in this case would have gone to trial in the absence of- as you say. And you don't know the answer to that because you say you've tried to get a hold of him. But we also have cases, don't we, where we have said that the sole basis for assessing substantial rights is whether there's- whether the error mattered in this case because the sentence would have exceeded the maximum sentence that he otherwise would have received but with the error. So why don't we apply that analysis here? So what you're asking me- I want to make sure I understand the question- because he did not receive more than the maximum sentence. Well, the question is whether the combined sentence in this case of imprisonment and supervised release could exceed the maximum sentence. You argued that it could. Yes. It would seem to me that that's the end of the analysis and that's an error that affects substantial rights. There's no question. That's exactly what Thorne said. Thorne said that that in and of itself affects substantial rights, that you simply cannot- you cannot sentence somebody in this particular situation. See, it's a very particular situation. If he had received an eight-year sentence or a seven-year sentence, he could not have received more than the maximum. What we're talking about here is a person that can receive more than what they were notified of and they were never notified that they could receive more than 10 years. They were only told that they could receive up to 10 years. And now he's in a position and his record is awful. I have almost no doubt whatsoever. He is never- I mean, he was a criminal history category six. He committed this while he was on supervised release. I have no doubt that he's going to end up doing- you know, I've been doing this for 25 years. It is highly unlikely he can do three years. And he's going to end up doing more than what he was told he was going to do. And therefore, under Thorne, he receives absolutely no benefit at all of having pled guilty. And it's very disappointing because as a trial attorney, I have stood in front of a judge. It just happened like a year ago. And the judge asked me, my client wanted to plead guilty. And the judge asked me, Mr. Kirkland, do you agree with your clients? And it's not like I'm some kind of trial attorney. He asked me, do you agree with your clients? I don't like going to trial. I want to make sure you- I don't think this is glorious as suggested. I hate it. But I was asked specifically, do you agree with your client's decision to plead guilty? And I told him no. And he said, I have never had someone say that in the 30 years that I've been on the bench. You and your client are going to have to come to some kind of agreement over this. The reason why I said that was because it's fine if he pleads, but if I know that he's going to receive no benefit at all from the plea, that his acceptance of responsibility will not change his sentence, that nothing is going to impact ultimately what he gets, I cannot agree to advise a client to plead guilty under those circumstances. Well, it's ultimately his call. It is his call. And what I did was I walked over, he put me aside, and I said, explain to me why you want to do this. And he said, I don't agree with your assessment of- Well, he was represented by counsel, right? He was represented by me. Okay, so he obviously thought he was receiving- Did you advise him to plead guilty? No, I advised him not to plead guilty. And when a judge asked me, when a judge asked me, do you agree with his decision to plead guilty, and I know that he's receiving no benefit at all, I tell him no. That's what I told this judge. And the judge says, well, you two are going to have to work this out. He felt he was getting some kind of benefit. He thought he was getting some kind of benefit that he was not. And we walked over and sat in the jury box, and he said, I do not agree with your- So, did you object to the omission at the time of sentencing? Object to the omission? What do you mean by the omission? You say that the district judge failed to explain the effect of a violation of supervised release. Oh, that wasn't our issue in this case. I thought that was the issue here. That's the issue here. I'm explaining to you that- We're back on this case. Yeah, I get it. What happened in this case? I get it. So, in this case- There was no objection. There was never an objection to anything. No, I mean, in fact, there was no objection made by his attorney. He never filed. I mean, all of this stuff is just in the record. All right, Mr. Kirkland, do you have anything else? Go ahead. I'm done. I just wonder why there was no objection. The reason why there was- I can't answer that, why his attorney should have advised him to object, but his attorney did not do that. Well, what are we supposed to- I mean, what are we supposed to do with that? The fact that- I get it. You're complaining of an error that there was no objection to. I mean, that's a problem because the whole idea is that you want to give district judges notice. The whole thing could have been corrected. It could have been, but I think that by failing to object, it still falls under plain error and a substantial right was affected under the rubric of Thorne and his progeny. I mean, if you take the total record, if you look at the total record, what has happened, the letters that he's written, his objections to him wanting to go back to court to fight these charges, I think it is clear that he is unhappy with the advice that he received. He's unhappy with the sentence that he received. And I think that it goes, I think it automatically under Thorne. I don't know whether he did or didn't receive a benefit or not. It's up to him to make that calculus. It's up to his lawyer to make that calculus. Apparently he thought he was receiving a benefit. He's never moved to withdraw the plea afterwards. And we have this precedent out here, the Aplicano precedent that says substantial rights is measured by the reasonable probability. And this case is a lot stronger than Aplicano because the case against him is stronger. I don't, I've got Aplicano right here and I looked at Aplicano and I think that you said that failing to object Aplicano actually bars, that's a bar. And that's not what, in my opinion. I have no further questions. Okay. All right. Thank you, Mr. Kirkland. Thank you, Your Honor. Ms. Major. Thank you, Your Honor. May it please the court. My name is Elizabeth Major and I am here representing the United States. The defendant cannot show plain error because Rule 11B1H does not require the court to explain the nature of supervised release, nor does it require the court to explain the consequences of violating supervised release. However, even if the rule does require this, the defendant cannot meet his burden under the plain error standard because he cannot show it affected his substantial rights. There was no error here first. The current version of Rule 11B1H requires the court to inform the defendant of and determine that the defendant understands any maximum possible penalty, including imprisonment, fine, and a term of supervised release. And that was done here. To be clear, the court went over the defendant. Yeah, so you read that and that's literally right. But what's the evidence that the drafters intended to minimize the breadth and scope of the advice that a defendant would have been entitled to before the change? Yes, Your Honor. The rule was amended in 2002. Prior to that, as you note, it required the court to inform the defendant of the effect of supervised release. The commentary to the rule change provides that the, one moment, that the changes were to be stylistic, except as provided below, and then goes on to cite Rule 11B1H. And in doing so, indicates that those were not just stylistic changes, that they took the words the effect of out, and taking that out has to mean something. Does it say that in the commentary? The commentary, one moment. It does, and it provided that the rules were stylistic only. And I cannot find my notes. Well, okay. There's some question as to exactly what, from my perspective, what that meant. But in any event, we've got precedent from the prior version of the rule where we affirmatively indicated that notwithstanding any uncertainty as to what advice a defendant was entitled to, that we would require district court judges to give an advice on not just the term of supervised release, but the significance of that. In that case, we haven't overruled that case. So why doesn't that case apply? Your Honor, that case does not apply because, well, I would say that if it does apply, this error is not plain. The rule was, prior to 1982, just required the court to advise the defendant of the maximum penalty. In Moore, the court said that the courts needed to explain the special parole. The rule was then amended to incorporate the Moore holding. The rule was then amended in 2002 to take out that language of the effect of. And this court has never had a chance to rule and- Well, here we are. Yes. So what are we supposed to do? Thank you. We would ask that the court find that if it were error, it's not plain because the court has never had the opportunity to say the Moore holding, yes, it still applies to the current version of the rule. And so this is not plain error. It was not clear at the time that this defendant pled guilty. Going forward, it would be plain error, but as when the defendant pled guilty, it was not a plain error. What was the effect of the violation of supervised release? Would that, in your judgment, subject the defendant to a term of imprisonment that was maximum? Yes, it would. In this case, the defendant was sentenced to 110 months. He was advised that he would be subject to a term of supervised release of three years. So he was advised that he would be on supervised release. But he wasn't told that. I mean, he wasn't told that the potential that the sentence would exceed the maximum, right? Correct. He was not told what would happen if he violated the term of special release. Mr. Kirkland makes the point that he can't get a hold of his client, but he sees absolutely no benefit to the defendant from accepting this plea. And logically, in his view, the defendant would have rolled the dice and taken the case to trial. What Mr. Kirkland and what Mr. King is asserting is that he received no benefit, but he knew that before. He would have gone over the guidelines with his attorney. He has almost all of the information when he pled guilty that he does now, except for now he's claiming had he known that he would have been sentenced to additional time if he violates supervised release. That's the only information that he was missing at the time of the plea. And so to say he received no benefit, he knew that going in. He knew his criminal history. He would have reviewed the sentencing guidelines with his attorney. And I would also point to the court on his PSR and in his PSR, the sentence here, the sentence was 110 months and three years of supervised release. And I'd bring to the court's attention. He did receive a benefit, but I would also submit that that that is not a part of this analysis. In his PSR, the probation. Why wouldn't it if the if, as you apparently argue, the question is whether or not the defendant would have pled guilty anyway, isn't that part of the analysis is what benefit the defendant received by pleading guilty? Yes, but my point is he would have had all of that information. He would have been able to weigh the risk and benefits. Sure, that's always the case. But we still have Rule 11 that imposes a requirement on the court irrespective of the I guess you're right to assume that the lawyer was competent in the absence of any evidence to the contrary. But that doesn't absolve the court from its obligations. If, in fact, it had an obligation to explain about the significance of the term of supervised release. Do you agree with that? I would agree with that. But then there's additional inquiry as to whether this affected his substantial rights. And I would turn to his PSR, his precedence report where probation found that he was subject to guidelines of over 130 months. But because of the mandatory minimum, he was looking at a guideline range of 120 months. So are you contending that he received a benefit? And if so, what? I'm contending that he had all of the information. You don't, you're not, you don't have a right to a benefit under a plea. Usually you do not guilty if you don't see that it's in your, if you see no base. I mean, you have a right to put the government through its paces if there's nothing to be gained otherwise, right? Absolutely. And there are also other reasons that are intangible. So I defendant may plead guilty that go into his decision making. But he knew all that before. And so it is disingenuous. And I don't think that there's any evidence in the record to show that had he known that if he violated his supervised release, even assuming that he didn't know that, and I'll turn to the PSR as to why he could have, he was on notice that he was facing additional time. But. Two questions here. And one is whether there was plain error. And you say, you know, even if there was error, it's not playing because you've got this amendment to Rule 11 and you've got all these, these other circuit cases that say you don't have to explain the effect of it. We're going to leave that to the, you can't explain it, but we're going to leave it to the lawyer to explain what the effect was. The question initially is whether this was was plain error. And then you come to the question of substantial rights, which you can get to on the third prong of Olano, and then you can get also to it under Rule 11H. And under our precedent of Policano, it says the question is, would you, was there a reasonable probability that you would not have pled guilty? Now, can we take into account in asking the reasonable probability question, the fact that the defendant now knows as a result of these appeals exactly what the effect of a violation of the supervised release standards would entail? And even now, he is not moved to withdraw the plea. And so I'm wondering if in this, in asking about substantial rights, whether we can take into account the fact that even with full knowledge of what the effect is, because it's been hashed out here, it would be in the briefs, it would be, still hasn't withdrawn the plea. And he still, counsel says he doesn't know. He says what he would have advised him. But he said, even at this stage, are we able to take, in determining substantial rights, are we able to take into account the fact that he knows what the effect of the plea is, effect of the violation of supervised releases? He still hasn't moved to withdraw his plea. And then the question under the fourth prong of Olano would be whether there's some miscarriage of justice, or whether this is something that, in some cases, it's an overlooked prong, but it is still a prong, which is it would, under the law here, would this have been an embarrassment to the administration of justice? That's what Olano puts that in very strong terms. Yes, Your Honor, I think that you can take that into consideration, along with the rest of the record, that there is nothing to suggest that he would have pled guilty, or would have insisted on going to trial, but for this error. What the defendant is asking this court to do, which the court has never done, is to presume prejudice in a Rule 11 error. And that is not the law, and that is not the rules, and that is nothing that the court has ever faced. Isn't his, the argument, it really is pigeonholed fairly narrowly, and that is that if he had been given 60 months, I believe, I understand Mr. Kirkland's argument, there's no prejudice to his substantial rights that he could potentially get up to more years. But because of he got 110 months, he could potentially serve an additional year and two months if he violates his substantial, or his supervised release. And he wasn't told that. He was told his maximum punishment was 10 years. Isn't this, I think that's what his argument is, and so if you could address that. Yes, I want to separate those two arguments. Just because, so in some prior cases, the court has found that the defendant, it's a harmless error, if it is error, to not advise, because the defendant is still not facing the maximum term. He got less, right? He got less. That enters to the government's benefit. It is a harmless error. That does not end the inquiry. The courts have not held, well, because you got more, that means it affected your substantial rights. We still have to look to see if it affected his substantial rights. We still have to look to see if, but for this error, he would have pled guilty, and he would have insisted on going to trial, and that's not here. He doesn't win just because he was sentenced potentially to over the maximum sentence. But can we, to follow up on that, my colleague's good points, can we take into account that there has, there's never been any violation as far as I can tell, or there's never been any revocation hearing as far as I can tell. And as a matter of notice, he knows that he should not violate the conditions of supervised release. But this would be a different case, I suppose. Well, I think it would be. I don't know how it would come out, but it would be a different case if he had violated the conditions of supervised release and if he had been sentenced to a term that was more than the maximum. And if we had that concrete situation before us, then I could say, wait a minute, you didn't give this person notice. But there's been no violation. There's been no revocation hearing. He has notice. He is forewarned. He hasn't sought to withdraw the plea even in the face of all of this. You know, he might, there might be some sort of after, a motion after oral argument, you know, that they say, okay. I mean, after hearing oral argument, the panel sometimes get, okay, now I want to do this. Seeing the drift of oral argument is to say, I want to withdraw the plea. We'll get that supplemental business. But as the case stands, he's not going to violate the conditions of supervised release. And I very much doubt he's going to receive a sentence that's going to be in excess of the maximum. So I wonder if, I wonder if we're just not engaging in a bit of shadow boxing. And Your Honor, I think that that also goes into the fact that this is potential sentence. This is not where he wasn't advised of a mandatory minimum sentence of incarceration. This is a potential sentence that has not been imposed yet. Also goes to show, can also be weighed in the court's determination as to whether he truly would have withdrawn his plea, would have not pled guilty had he known this information. And following up on that. And I'm sorry to interrupt you, but it would seem to me that the government would likely argue that at a revocation proceeding, that the claim that of lack of notice of either forfeited or waived because you didn't raise it either at trial or on appeal. Isn't that right? That could be correct. I don't know what our argument would be. I think it would be correct. And so I'm not sure that waiting until he actually gets revoked is the answer. The question is what to do about it now, if anything. Well, I would also like to bring to the court's attention that he was sentenced to 110 months. He did receive a benefit of this plea, and therefore the court may on a revocation only sentence him up to that 10 month difference. He's facing two years. That's another what if out there where. What is the benefit again? Just say it. He was facing 120 months. That was his guidelines, and the court sentenced him to 110 months with three years of supervised release. So he did receive a benefit. I'm not sure if that's part of the analysis, but I think that that also goes to show that he would not have gone to trial. I would like to just insist on how strong this case was. The defendant was seen firing a gun. The gun was found there. Officers retrieved the gun. He gave statements admitting to possession of the gun, and courts have looked to the strength of the case and assessing whether a defendant would have pled guilty. But for received 120 months, if he had gone to trial as a result of this. I do, and I think that's clear from the record from what the district court judge said he gave him this benefit for pleading guilty. Even though the defendant is not entitled to a benefit, but he did give him a benefit for pleading guilty. It seems pretty strong. Yes, he was seen with a gun. The gun was found, and he admitted to the gun. So it is a very strong case. There are lots of reasons why a defendant may not want to go to trial in addition to he perceives that he receives no benefit. Courts have looked to the strength of the case. There's just nothing in this record showing that this defendant would not have pled guilty, but for the rule 11 errors. Let me ask you a question about the enhancement with respect to the state offense, the four level enhancement. So the district court never made a finding of facilitation with respect to the firearm as best I can tell. Isn't that a procedural error that sort of requires us to send the case back to make that finding? Your Honor, that has not been raised. I didn't mean to sandbag you. That's okay. I would argue that it was part of the facilitation that the defendant didn't object to that portion, and so it is taken that it was a part of the inappropriate enhancement. Do you have anything else? I do not have anything else. If the court has no questions, we rest on our brief. Thank you very much. This appears to be the rare case, Mr. Kirkland, where you didn't reserve any time for rebuttal. Or did you? I did not. Okay. Well, let me thank you for taking this case on, Mr. Kirkland, as court appointed. We appreciate your doing that. We couldn't do our work without lawyers who are willing to take on these cases and ably argue it as you did here today.  Thank you for representing the government's interests. We're going to come down and greet both of you, and then we'll take a short recess before moving on to our final two cases. I'm sorry that I can't come down and shake your hands. Mr. Kirkland, I want to thank you, and I say we have enjoyed our colloquy as long as that of your opposing number, and I've asked you some pretty direct questions. You've given me some pretty direct answers, and I want to tell you that however I might appear on the bench, I'm actually a pretty good guy. Well, I think you're a champion. There are three of us here. You might want to shut down.
judges: Albert Diaz, J. Harvie Wilkinson III, Robert S. Ballou